## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

CARRIE JEAN HUFFMAN, AS
PERSONAL REPRESENTATIVE
OF THE ESTATE OF TERRY
TERRELL PETTIWAY,
DECEASED,

     Plaintiff,

v.

JEFFERSON DUNN, et al.,

     Defendants.

Civ. A. No.: 4:20-cv-01293-CLM

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

# TABLE OF CONTENTS

**Page**

BACKGROUND .......................................................................................... 1

ARGUMENT ............................................................................................... 6

    I.     Defendants Should Be Compelled to Immediately Produce All
         Documents They Have Promised to Produce. .......................... 9

    II.    Defendants Should Be Compelled to Produce Responsive
         "Communications.". ............................................................... 11

    III.   Defendants Should Be Compelled to Produce Documents and
         Communications Regarding Mr. Pettiway, Pruitt, and Mr.
         Pettiway's Assault on September 2, 2018. ............................... 12

    IV.   Defendants Should Be Compelled to Produce Documents and
         Communications Regarding the Security Issues. ..................... 15

    V.    Defendants Should Be Compelled to Produce Documents and
         Communications Regarding Defendants' Knowledge and
         Response(s) to the Security Issues. ......................................... 22

    VI.   Defendants Should Be Compelled to Produce Documents
         Defendants Intend to Rely on in Support of Their Defenses or
         Affirmative Defenses. ............................................................. 24

CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Dunn v. Dunn*,
   163 F. Supp. 3d 1196 (M.D. Ala. 2016)..........................................................6, 7

*Dunn v. Dunn*,
   2016 WL 4127769 (M.D. Ala. Aug. 2, 2016) .................................................6, 8

*Evanston Ins. Co. v. Mega Constr. Co.*,
   2020 WL 8362816 (S.D. Ala. Mar. 18, 2020)...................................................13

*Morales v. Sixth Ave. Tire Ctr., Inc.*,
   2020 WL 6811482 (N.D. Ala. July 27, 2020) ...................................................25

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)..............................................................................................6

*Sharp Realty Mgmt. LLC v. Capitol Specialty Ins. Corp*,
   2011 WL 13233728 (N.D. Ala. Dec. 15, 2011) ..................................................7

*United States v. Tinoco*,
   304 F.3d 1088 (11th Cir. 2002) ...........................................................................6

## Statutes & Other Authorities

Federal Rules of Civil Procedure
   Rule 26...................................................................................................................6
   Rule 37...................................................................................................................1

Plaintiff Carrie Jean Huffman, as personal representative of the Estate of Terry Terrell Pettiway ("Mr. Pettiway"), her son, respectfully submits this Motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure, seeking an order compelling Defendants to produce documents responsive to Plaintiff's First Master Set of Requests for Production of Documents (the "Requests"), served March 5, 2021, attached hereto as Exhibit 1, as modified by Plaintiff's proposed revised Requests served October 12, 2021 (the "Revised Requests"), attached hereto as Exhibit 8.[1] *See* Dkt. 64 ¶ 18. The parties have endeavored in good faith to resolve this dispute, and Plaintiff now seeks the Court's intervention.[2] In support of this Motion, Plaintiff states as follows:

## **BACKGROUND**

1. Plaintiff seeks damages from Defendants on behalf of the estate of her deceased son for violations of Mr. Pettiway's Eighth Amendment rights and wrongful death in connection with his murder while in the Defendants' care in St. Clair Correctional Facility ("St. Clair" or "St. Clair Prison") on September 2, 2018.

---

[1] For ease of review, Plaintiff has further revised the Revised Requests to reflect the narrowed timeframes outlined in this Motion. Exhibit 8 contains a clean version and a redline off the version submitted to the Court on November 30 in advance of the parties' teleconference.

[2] The parties' attempts to resolve the current discovery disputes are fully recited in Plaintiffs Motion for Leave to File a Motion to Compel, Dkt. 64, and the relevant communications between the parties are attached as exhibits to this Motion for completeness and the Court's reference as appropriate. *See* Exs. 1-9.

2.     Mr. Pettiway was a 29-year old prisoner at St. Clair, when he was stabbed 14 times by one or more inmate(s) in open sight.  Mr. Pettiway died of his knife-inflicted injuries later that day, having been left to bleed out by prison staff.

3.     Ms. Huffman asserts claims against each of the Defendants for wrongful death under Alabama's wrongful death statute and violations of Mr. Pettiway's Eighth Amendment rights, stemming from Defendants' deliberate indifference to the unconstitutional conditions at St. Clair that resulted in Mr. Pettiway's death.  *See generally* Dkt. 28 ("Amended Complaint" or "Am. Compl.").  Additionally, Ms. Huffman brings claims against Defendant Dixon for violation of Mr. Pettiway's Eighth Amendment rights due to his deliberate indifference to Mr. Pettiway's medical needs after he was assaulted.  *Id.* ¶¶ 146-51.

4.     Defendants filed an Answer to the Amended Complaint, in which Defendants denied allegations of liability and asserted thirty purported affirmative defenses.  Dkt. 32.   Defendants also moved to dismiss only Plaintiff's wrongful death claim and the "Unknown Correctional Officers" as defendants, whose identity Plaintiff had not yet been able to ascertain.  Dkt. 30.  By Order dated June 21, 2021, the Court denied Defendants' motion to dismiss the wrongful death claim but dismissed the "Unknown Correctional Officers" subject to potential further amendment by Plaintiff upon identifying such individuals through discovery.  Dkt. 53 at 23-24.

5.     Accordingly, all of Plaintiff's claims asserted in the Amended Complaint against the named Defendants remain in the case, and all of Plaintiff's claims and all of Defendants' asserted defenses are within the broad scope of discovery of non-privileged information and documents relevant to those claims or defenses permitted under Fed. R. Civ. P. 26(b)(1), subject to the limitations therein of proportionality and burden.

6.     On March 5, 2021, Plaintiff served the Requests on Defendants. Ex. 1. The Requests sought documents and information from January 1, 2014 to present that are necessary for Plaintiff to prove her claims, including: records regarding Mr. Pettiway, his suspected murderer, Gerard Pruitt ("Pruitt"), the circumstances of Mr. Pettiway's murder on September 2, 2018, and the subsequent investigation thereof, *id.* at Requests 3-4, 8-12, 14; records relating to the unsafe conditions at St. Clair and other Alabama Department of Corrections ("ADOC") facilities—including the normalized culture of inmate-on-inmate violence, chronic understaffing, corruption, lack of inmate supervision, overcrowding, inoperative locks, presence of blind spots, and ready access to weapons and contraband—that posed a substantial risk of serious harm to Mr. Pettiway, *id.* at Requests 1-2, 5, 13, 15-16; records regarding Defendants' awareness of and efforts, if any, to remedy or mitigate those conditions, *id.* at Requests 6-7, 17-20; and documents Defendants intend to rely on in support of their defenses or affirmative defenses, *id.* at Request

21. In accordance with the terms of the parties' negotiated agreement regarding discovery embodied in their Rule 26(f) Report, the Requests sought Documents in the custody, control, or possession of the Defendants and ADOC (Defendants agreed to produce responsive documents held by ADOC without the need separately to subpoena ADOC). Ex. 1; Dkt. 43 ¶ 4(f)(i).

7. Defendants served Responses and Objections to the Requests. *See* Ex. 2. As detailed in Plaintiff's Motion for Leave to File a Motion to Compel, Dkt. 64, Plaintiff has attempted to negotiate with Defendants for more than eight months in order to obtain the documents responsive to these Requests. *E.g.*, Exs. 5, 7.

8. At the core of the current discovery deadlock is Defendants' insistence on interpreting the scope of this case so narrowly that it does not encompass Plaintiff's actual claims. Defendants consistently have maintained that the scope of this case is limited to the physical particulars of "a single assault at [St. Clair Prison] on September 2, 2018" and that discovery should be cabined to "Mr. Pettiway and that assault" on that day. Ex. 4 at 1-2.

9. Defendants' characterization ignores entirely the allegations in the Amended Complaint. Plaintiff has alleged in ample detail that Mr. Pettiway's murder was not an anomaly, but was the result of longstanding dangerous conditions of which Defendants were aware and that Defendants perpetuated through their inaction. Specifically, Plaintiff has alleged that Defendants were

4

aware of the unsafe conditions that existed at St. Clair for years leading up to Mr. Pettiway's death, including a long, widely-known, and well-publicized history of extreme violence, widespread availability of weapons among prisoners, a climate of expected violence at the facility, overcrowding, understaffing, and systemic security failures. Notwithstanding their knowledge and ability to act to correct or mitigate these conditions, each Defendant failed to take reasonable, necessary, and appropriate steps to address these dangerous conditions which resulted in Mr. Pettiway's murder. Each Defendant thereby acted with deliberate indifference to Mr. Pettiway's safety and need for medical care. Am. Compl. ¶¶ 106-28.

10. On October 12, 2021, in an attempt to resolve this fundamental impasse and other disagreements regarding the Requests, Plaintiff proposed the Revised Requests as a compromise and without prejudice to the original Requests. Exs. 7-8. In addition to the Pettiway-specific documents and information, the proposed Revised Requests (i) identified specific categories of documents concerning the unconstitutional prison conditions that Plaintiff is aware, and Defendants cannot deny, are maintained by Defendants and ADOC and have been produced in other well-publicized federal investigations and litigations, (ii) limited the requests concerning unconstitutional prison conditions throughout ADOC to documents pertaining to St. Clair, (iii) agreed to withdraw certain of the Requests altogether, and (iv) asked Defendants to otherwise confirm that there were no

additional documents responsive to the proposed Revised Requests. Ex. 8; Dkt. 64 ¶ 18.

11.     In light of the November 30 teleconference with the Court, Plaintiff limits her requests for relief in the present Motion to these Revised Requests, rather than the Requests. In so narrowing her Requests, Plaintiff reserves rights with respect to the original Requests as may be appropriate as the case proceeds.

## ARGUMENT

12.     It is the law that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

13.     In civil rights cases, "a liberal approach to adjudication of discovery disputes" is particularly appropriate. *Dunn v. Dunn*, 2016 WL 4127769, at *5 (M.D. Ala. Aug. 2, 2016); *Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1207 (M.D. Ala. 2016) ("[T]he normally predominant principle of utilizing all rational means for

6

ascertaining truth . . . is at its strongest in civil-rights cases."). Indeed, "suits under 42 U.S.C. § 1983 should be resolved by a determination of the truth rather than a determination that the truth shall remain hidden." *Id.* (internal quotation marks, alterations, and citations omitted.). As such, "the party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted." *Sharp Realty Mgmt. LLC v. Capitol Specialty Ins. Corp*, 2011 WL 13233728, at \*3 (N.D. Ala. Dec. 15, 2011).

14.     To be clear, Ms. Huffman does not allege that any of the Defendants personally wielded the knife that killed Mr. Pettiway. Indeed, as Plaintiff's counsel noted during the November 30 teleconference, this is not a criminal case focused on assault allegations or otherwise. Rather, as the Amended Complaint sets forth in great detail, Ms. Huffman claims that St. Clair was plagued by systemic and well-known deficiencies related to safety and living conditions for years, Am. Compl. ¶¶ 52-92, that the Defendants were aware of those conditions, *id.* ¶¶ 93-101, and that, because the Defendants failed to take reasonable action to address those deficiencies before September 2, 2018, Mr. Pettiway lost his life, *id.* ¶¶ 102-28.

15.     Now, with only six months remaining until the close of discovery, and only three months before Plaintiff's expert report is due, Defendants' continued refusal to produce relevant documents has prejudiced Plaintiff's ability to pursue her claims on behalf of her son's estate, including Plaintiff's ability to prepare for

and conduct depositions of Defendants and others, her ability to identify and interview potential witnesses, her ability to provide critical documents relevant to potential expert reports and testimony, and her ability to prepare for trial of the claims and rebuttal of Defendants' asserted defenses. As explained below, the discovery Plaintiff seeks is critical to her ability to litigate these claims and can only be obtained from the Defendants and ADOC. *Dunn*, 2016 WL 4127769, at *5 ("A most important fact to be considered in the determination as to whether particular evidence should be discovered is the importance of the evidence to the plaintiff's case.").

16. Defendants are entitled to defend against Plaintiffs' claims, but they are not entitled to violate their discovery obligations under the Federal Rules because they dispute Plaintiff's claims, do not like that they have been interposed, or are trying to run out the clock. Moreover, neither Plaintiff's original Requests, nor her pared-down Revised Requests, nor the relief sought in this Motion, constitute a "fishing expedition," in which Plaintiff hopes to get lucky in discovering information that might fit her theory of the case. Rather, the Amended Complaint pleads facts in extraordinary detail, as to which Plaintiff seeks source documents and other relevant information, and Defendants interpose blanket denials of those facts and assert legal defenses that would excuse Defendants' misconduct or their failure to act. Defendants have possession, custody, or control of a

8

multitude of known responsive documents that bear on this case, the production of which will not be disproportionate to the case or burdensome. Defendants simply do not want Plaintiff to have them.

17. Accordingly, Plaintiff seeks an order from the Court compelling Defendants to produce the documents responsive to the Revised Requests attached hereto as Exhibit 8 in the possession, custody, or control of the individual Defendants and ADOC, or confirm that no such documents exist.

## I. Defendants Should Be Compelled to Immediately Produce All Documents They Have Promised to Produce.

18. As noted in the Motion for Leave and during the November 30 telephonic conference, review of documents originally produced by Defendants identified a substantial number of yet-to-be-produced, fundamentally relevant responsive documents referenced in those produced documents. Ex. 3 at 6-8. Plaintiff promptly informed Defendants of these omissions, identifying the additional "Referenced Documents" to be produced, and Defendants' counsel agreed to search for and produce them. *Id.*; Dkt. 64 ¶ 13. To date, these many months later, they still have not been produced. In addition to (1) the Referenced Documents, Ex. 3 at 6-8, Defendants also agreed many months ago to produce (2) any emails or other communications that relate to Mr. Pettiway's murder, and (3) any emails to or from or within ADOC that relate to similar incidents of violence at

St. Clair Prison from September 2, 2017 through September 2, 2018. Ex. 4 at 1-2. Defendants have not kept any of these promises and have not produced any of these materials.

19.     The Referenced Documents that Defendants have failed to produce include:

a.     Any notes, video recordings, or other documentation related to the interviews of prisoners Gerard Pruitt, Darrlyn Thomas, and George Robinson, and St. Clair correctional officials Dominique Vales, Dustin Collier, Bruce Hodge, Rafael Santa-Maria, Gary Malone, and Phillip Dixon referenced in the four-page ADOC Intelligence and Investigation ("I&I") Investigative Report of the murder of Mr. Pettiway;

b.     Warrants obtained on September 17, 2018 relating to Gerard Pruitt and any analysis of the evidence provided to the Alabama Department of Forensic Sciences, as referenced in the Investigative Report; and

c.     Photographs, evidence forms, statements, body chart, autopsy release, and other forms referenced in the September 3, 2018 Incident Report related to Mr. Pettiway's murder.

*See* Ex. 3 at 6-8.

20. The relevance of each of these documents is beyond dispute, and withholding them is patently inexcusable and obviously impairs Plaintiff's ability to prosecute her claims. They relate directly to Mr. Pettiway's murder and the circumstances precipitating it, including contemporaneous documents and interviews with witnesses. Defendants already agreed to produce the documents and have failed to do so. Therefore, the Court should compel production.

## II. Defendants Should Be Compelled to Produce Responsive "Communications."

21. As detailed further below, Plaintiff seeks discovery of communications concerning numerous relevant topics in Defendants' and ADOC's possession, custody, or control.

22. In response, Defendants have agreed only to search Defendants' official ADOC email accounts for responsive communications. *See* Ex. 9 at 2-3.

23. This is wholly unreasonable. As an initial matter, Defendants are each named in their individual capacity. As such, their personal communications are clearly within the scope of permissible discovery. Moreover, the term "Communication" is clearly defined in the Requests as encompassing a broad array of mediums beyond just email, including text messages and social media.

24. Accordingly, to the extent Plaintiff seeks discovery of communications in the Revised Requests, Defendants should be compelled to produce all

"Communications," as that term is defined in the Requests, from whatever source in their possession, custody or control—including personal email accounts, texts, and social media.

### III. Defendants Should Be Compelled to Produce Documents and Communications Regarding Mr. Pettiway, Pruitt, and Mr. Pettiway's Assault on September 2, 2018.

25.    Plaintiff is also entitled to documents and communications related to Mr. Pettiway, his assailant, and the events of September 2, 2018.  Specifically, Plaintiff seeks:

> a.  All communications concerning Mr. Pettiway's assault and death on September 2, 2018 until present day (Ex. 8 at Revised Request 8);
>
> b.  Specific categories of documents related to any investigation of Mr. Pettiway's murder until present day (*id.*);
>
> c.  All documents and communications regarding Mr. Pettiway's medical care on September 2, 2018 (Ex. 8 at Revised Request 11);
>
> d.  Documents showing the employees present in St. Clair Prison when Mr. Pettiway was murdered, (Ex. 8 at Revised Requests 9-10);
>
> e.  Any documented failures by or discipline of St. Clair Prison staff related to Mr. Pettiway's assault until present day (Ex. 8 at Revised Request 12);

f. Documents regarding any I&I reports, disciplinary infractions, or housing assignments related to Mr. Pettiway and Pruitt from January 1, 2014 to present, and visitation, phone, medical and Prison Rape Elimination Act records concerning Mr. Pettiway from September 1, 2017 (Ex. 8 at Revised Requests 3-4);

g. All communications concerning Mr. Pettiway or Pruitt from September 1, 2017 to present assault (Ex. 8 at Revised Request 3); and

h. Documents showing the physical layout of St. Clair Prison on September 2, 2018 (Ex. 8 at Revised Request 14).

26. In addition to producing these enumerated categories of documents, Defendants should confirm in writing whether their responsive production is complete.

27. Even through Defendants' unduly narrow lens of the scope of this case, this discovery is plainly relevant, necessary, and proportional to the needs of the case. *See Evanston Ins. Co. v. Mega Constr. Co.*, 2020 WL 8362816, at \*2 (S.D. Ala. Mar. 18, 2020) (granting motion to compel production of documents and information relating to the accident at issue and the related disputed terms of an insurance contract at issue, finding to "disallow discovery concerning these terms at this state would be to predetermine" the ultimate issue in the case).

28.     While Defendants have produced a small subset of documents responsive to Revised Requests 3, 4, 8, 9, 10, 11, 12, and 14, Defendants have failed to respond to Plaintiff's requests for confirmation that no additional responsive documents or communications are in the possession, custody, or control of the Defendants or ADOC, *see* Ex. 9, and without such confirmation, Plaintiff can only guess at whether the production is complete or whether additional responsive documents exist. Indeed, as indicated above, Plaintiff knows relevant documents related to the incident have *not* been produced.

29.     Of particular note, Revised Requests 3 and 4 seek all communications regarding Mr. Pettiway and Pruitt from September 1, 2017 through the present. In response, Defendants agreed to produce only responsive communications through the date of Mr. Pettiway's murder, September 2, 2018. Ex. 9 at 2-3. While those communications through the date of the incident are of course responsive and must be produced, any temporal limitation is unreasonable. Any communications *after* September 2, 2018—in September or at any time thereafter—are most likely to include evidence regarding the facts of Mr. Pettiway's assault and death, any prison conditions, including security failures or deficiencies, related to the assault and his death, Defendants' awareness of those conditions, and Defendants' actions or inaction with respect to those conditions. Defendants' proposal to cut off production at September 2 plainly is absurd.

30. Accordingly, Defendants should be compelled to produce all documents responsive to Revised Requests 3, 4, 8, 9, 10, 11, 12, and 14 not already produced or confirm that no such documents exist.

## IV. Defendants Should Be Compelled to Produce Documents and Communications Regarding the Security Issues.

31. Revised Requests 1, 2, 5, 13, 15, and 16 seek documents and communications regarding Security Issues at St. Clair.[3] These documents are necessary to establish an element of Plaintiff's claims: that the conditions at St. Clair posed a substantial risk of serious harm to Mr. Pettiway. Further, these materials are crucial in establishing the Defendants' subjective knowledge of the unsafe conditions at St. Clair. Defendants may disagree with Plaintiff's theory of the case, but Plaintiff is nevertheless entitled to fact discovery necessary to prove her claims.

32. Defendants have steadfastly objected to producing any documents in response to Requests 1 and 2, which seek the documents produced to the United

---

[3] The "Security Issues" are defined in the Requests as "any and all issues that affect the safety of inmates at St. Clair from threatened or actual physical injury, including but not limited to: (1) inmate-on-inmate assaults, sexual assaults, or homicides; (2) understaffing; (3) the presence of weapons and contraband; (4) contraband searches; (5) prison supervision; (6) employee corruption; (7) overcrowding; (8) security deficiencies, including broken locks, non-functioning security cameras, and blind spots; and (9) the use of force by St. Clair employees on St. Clair inmates. For the avoidance of doubt, use of force includes any unwanted physical contact in any context, including physical and sexual assaults, fights, or verbal and/or physical altercations." Ex. 1.

States Department of Justice ("DOJ") in connection with its well-publicized investigation of the ADOC prison system (the "DOJ CRIPA Investigation"), *e.g.*, Am. Compl. ¶¶ 57-58, on the purported ground that "the DOJ [CRIPA] investigation has nothing to do with [St. Clair Prison], especially as of 2019, and should not be discoverable in this case." Ex. 4 at 2.

33. To the contrary, the DOJ CRIPA Investigation—which began in 2016 and culminated in a comprehensive and damning report finalized just seven months after Mr. Pettiway's murder—concluded that there was "reasonable cause to believe . . . the conditions in Alabama's prisons for men," which includes St. Clair, "violated[d] the Eighth Amendment of the U.S. Constitution" during the time that Mr. Pettiway was housed at St. Clair. *Investigation of Alabama's State Prisons for Men*, United States Department of Justice Civil Rights Division (July 23, 2020), at 1 ("2020 DOJ CRIPA Report"). The DOJ reviewed documents and data from 2015 to 2018. 2020 DOJ CRIPA Report, at 4-5. As such, Defendants cannot plausibly argue that the materials provided to the DOJ would not lead to the discovery of admissible evidence of a violation of Mr. Pettiway's Eighth Amendment rights. While the investigation concluded shortly after Mr. Pettiway's murder, the underlying data gathered in connection with the investigation reflects conditions and awareness of those conditions prior to and precipitant of Mr. Pettiway's murder. The DOJ's 2019 and 2020 CRIPA Reports described the conditions at ADOC

16

facilities, including at St. Clair, in detail and referenced documents and data provided during the investigation.

34.     Moreover, any burden argument is without merit.   Not only are documents ADOC provided to the DOJ in connection with the DOJ CRIPA Investigation highly relevant, but because they have already been identified and provided to DOJ, Defendants should be able to readily produce similarly responsive documents here.[4]   To further reduce any burden on Defendants, Plaintiff has offered to limit the scope of the documents requested in Revised Requests 1 and 2 only to those relating to St. Clair Prison.[5]   To further address Defendants' vagueness and burden objections, Plaintiff specified the categories of documents she views as responsive to Requests 1 and 2.   In particular, Plaintiff seeks the following Documents and Communications that the Defendants provided to the DOJ related

---

[4] For example, ADOC provided "incident reports . . . policies and regulations, training materials, . . . personnel files, staffing plans, shift rosters, duty post logs, and a limited number of investigative files" in addition to "its entire incident report database from 2015 through June 2017 and a portion of its incident report database from June 2017 through April 2018" to the DOJ. *See* 2020 DOJ CRIPA Report at 4. These documents are likely to lead to the discovery of admissible evidence and are proportional to the needs of this case independent of whether they underlie the CRIPA investigation. However, the fact that they were provided to the DOJ in connection with the investigation undercuts any argument from the Defendants that producing these relevant documents here would be unduly burdensome.

[5] For the avoidance of doubt, Plaintiff's willingness to narrow the scope of her requests to documents concerning St. Clair does not limit documents responsive to Revised Requests 1 and 2 only to those documents that are concerning St. Clair, or documents that explicitly mention St. Clair.  Plaintiff's compromise is only meant to remove documents wholly unrelated to St. Clair from the documents Defendants must produce.  Therefore, for example, if there are documents or communications that relate to the ADOC system as a whole, which necessarily includes St. Clair, those documents should be produced.

to St. Clair in connection with the 2016 DOJ CRIPA Investigation, the April 2, 2019 DOJ report, and the July 23, 2020 supplemental DOJ report (to the extent not already produced): incident reports; policies and regulations; training materials; personnel files; staffing reports and plans; shift rosters; duty post logs; investigative files; ADOC Incident report database; Safety and Security reports; recommendations, reports, proposals, or plans addressing infrastructure deficiencies at St. Clair.

35. The other requests related to the Security Issues, Revised Requests 5, 13, 15, and 16, are equally relevant and necessary to establishing the unconstitutional conditions at St. Clair and would not be unduly burdensome to produce. The materials sought by these Revised Requests have been produced by the Defendants and ADOC in other litigations, including the *Duke v. Dunn* litigation, No. 4:14-cv-01952-VEH (N.D. Ala. 2015). Ex. 10 at 6-7. Moreover, as to Revised Requests 13, 15, and 16, Defendants have disclosed elsewhere that St. Clair Prison maintains an incident module database where the requested documents are stored. Ex. 11 at 18; 2020 DOJ CRIPA Report at 4-5. As such, responsive documents should be easily identifiable and accessible.

36. Revised Request 5 seeks complete personnel files for each of the Defendants. Defendants have produced some documents pertaining to Defendants, except for Jefferson Dunn, but have not confirmed that no additional responsive

18

documents exist. Defendants should be compelled to produce any remaining responsive documents and all responsive documents with respect to Mr. Dunn, or confirm that no such documents exist.

37. Revised Requests 13, 15, and 16 seek several of the following categories of documents from 2015 to 2019 related to St. Clair:

a.   Inmate count sheets, inmate bed rosters, and staff shift rosters for St. Clair for the 1st and 15th of each month;

b.   All duty officer reports, worker's compensation filings by St. Clair employees, incident reports, incident report logs, Investigation & Intelligence reports, or other investigative materials related to any closed and completed investigation concerning any incident at St. Clair involving (i) violence, other than the September 2, 2018 Incident, including physical assault, rape, or homicide, inmate-on-inmate violence, [or] use of force by St. Clair personnel; (ii) weapons; (iii) narcotics or other contraband among the inmate population; (iv) blind spots; (v) non-functioning security cameras; or (vi) broken locks;

c.   All security audits, responses, and follow-up reports concerning St. Clair, including audits of St. Clair conducted by the Inspector General's Office, conducted pursuant to ADOC Administrative Regulation No. 322, or conducted by the National Institute of

19

Corrections or any other regulatory body (this request would seek any such documents from September 1, 2015 to September 30, 2018);

d.  All meeting minutes, directives, warden overrides, reports, or internal reviews pertaining to the Internal Classification Board, Incident Report Manager, or Quality Improvement Team's operations at St. Clair;

e.  All non-restricted Administrative Regulations or Standard Operating Procedures pertaining to the Security Issues in effect during the relevant time period (this request would seek any such documents from September 1, 2015 to September 30, 2018);

f.  Documents and Communications concerning the termination, suspension or discipline of any St. Clair or ADOC employee related to the provision, sale, facilitation, or smuggling of contraband, including weapons and narcotics, to the inmate population at St. Clair; and

g.  All Communications, memoranda, reports, data, or notes sent, received, or authored by the Defendants from September 1, 2015 to September 30, 2018 concerning the following at St. Clair: (i) violence, other than the September 2, 2018 Incident, including physical assault or homicide, inmate-on-inmate violence, use of force by St. Clair personnel; (ii) understaffing; (iii) corruption; (iv) contraband searches (or lack thereof); (v) prisoner supervision (or lack thereof); (vi)

presence of weapons among the inmate population; (vii) presence of contraband (including narcotics); (viii) blind spots; (ix) non-functioning security cameras; or (x) broken locks.

38.    In light of the November 30 teleconference with the Court, Plaintiff is willing to further limit the relevant time period for these requests to September 1, 2016 to December 31, 2018 (unless otherwise specified above).

39.    This timeframe is reasonable and will not pose undue burden on Defendants.  Plaintiff must show that the conditions at St. Clair Prison posed a substantial risk of serious harm and that the Defendants failed to address those risks before September 2018.  Placing even further limitations on the relevant timeframe would potentially enable Defendants to shield from scrutiny documents that demonstrate the deplorable and blatantly unsafe conditions at St. Clair, as well as Defendants' unreasonable actions or inaction in response to these conditions. Moreover, Plaintiff's request for documents concerning such conditions in the four months following Mr. Pettiway's murder is more than reasonable to capture any acknowledgments of deficiencies that existed as of September 2, 2018 but had not yet been identified.  To be clear, as noted above, Plaintiff in any event seeks non-privileged responsive documents concerning or mentioning Mr. Pettiway to date, without time limitation.

40.     Defendants have primarily objected to producing these documents based on their assertion that they go beyond the immediate circumstances of Mr. Pettiway's stabbing.  However, as noted above, Defendants' narrow view is starkly at odds with the actual claims and factual allegations set forth in the Amended Complaint, *see supra* ¶¶ 9-10, 14, and this civil case for violation of Mr. Pettiway's civil rights and wrongful death is the case that the parties are litigating, not the criminal assault case that Defendants might prefer.  Plaintiff has taken steps to further modify the Revised Requests to reduce any arguable burden of production, while still seeking the necessary documents to prove her case.

41.     Accordingly, because the requested documents and communications regarding the Security Issues are highly relevant, reasonable in scope and time, and would not be unduly burdensome to identify and produce, Defendants should be compelled to provide a full and complete production responsive to Revised Requests 1, 2, 5, 13, 15, and 16, as further limited above, or confirm that no such documents exist.

## V.     Defendants Should Be Compelled to Produce Documents and Communications Regarding Defendants' Knowledge and Response(s) to the Security Issues.

42.     Revised Requests 7, 17, and 20 seek documents necessary to show Defendants' knowledge of, and actions taken to address, the conditions at St. Clair.

43.     Revised Request 7 and 17 seek documents reflecting relevant policies and procedures related to the safety or security of prisoners at St. Clair—or changes thereto.  Although the Requests originally encompassed a broader time period, Plaintiff is willing to further narrow the relevant time period to September 1, 2016 to December 31, 2018, for the reasons, and with the qualifications, set forth above. Defendants should be compelled to either produce all responsive documents or confirm that no such documents exist.

44.     Revised Request 20 seeks, "All Documents and Communications concerning any efforts by any of the Defendants or ADOC to address, improve, mitigate, remediate, or modify any conditions, weaknesses, failures, or deficiencies of any kind created by understaffing, lack of contraband searches, lack of prisoner supervision, presence of weapons among the inmate population, and non-functioning security cameras, and broken locks."  This request is integral to Plaintiff's claim that Defendants acted with deliberate indifference to the unconstitutional conditions at St. Clair that resulted in Mr. Pettiway's death, and also directly relates to Defendants' defenses that they are not culpable or that their misconduct should be excused.  In the alternative, Defendants should confirm that no such documents exist.  As written, Revised Request 20 seeks materials from January 1, 2014 to present.  However, Plaintiff is willing to further limit the relevant time period for these requests to September 1, 2016 to December 31, 2018.

45.     These Revised Requests are directly targeted at uncovering admissible evidence regarding the reasonableness of Defendants' actions or inaction regarding to the Security Issues.  Moreover, they are limited in time and scope, as narrowed to a reasonable timeframe, to assess Defendants' responsiveness to the egregious conditions at St. Clair while Mr. Pettiway was housed there.  Indeed, these documents should be readily identifiable using search terms, minimizing any arguable production burden.

46.     Thus far, Defendants have made a scant production in response to these Revised Requests and have refused to confirm that no additional responsive documents exist.

47.     Accordingly, Defendants should be compelled to produce all documents or communications responsive to Revised Requests 7, 17, and 20, as modified, not already produced or confirm that no such documents exist.

## VI.     Defendants Should Be Compelled to Produce Documents Defendants Intend to Rely on in Support of Their Defenses or Affirmative Defenses.

48.     Plaintiff also requested all documents and communications concerning Defendants' responses to the allegations in the Amended Complaint and Defendants' defenses, including their assertion of Eleventh Amendment immunity, qualified immunity and additional doctrines of immunity.  Ex. 8 at Revised Request 21.  To date, Defendants have refused to produce such documents, in plain violation

of their discovery obligations and the requirement for mandatory initial disclosures under Fed. R. Civ. P. 26 (a)(1).

49.     Plaintiff maintains that this Revised Request is relevant and proportionate to the needs of the case.  *See Morales v. Sixth Ave. Tire Ctr., Inc.*, 2020 WL 6811482, at *3 (N.D. Ala. July 27, 2020) ("The plaintiff is entitled to fact discovery to test the defendants' position . . . .").

50.     Accordingly, Defendants should be compelled to produce all documents and communications responsive to Revised Request 21, or to confirm that no such documents exist.

## CONCLUSION

WHEREFORE, based upon the foregoing, Plaintiff seeks an Order compelling Defendants to produce all documents in the possession, custody, or control of the individual Defendants and ADOC that are responsive to Plaintiff's Revised Requests, as further modified herein, or to confirm that no such documents exist.

Respectfully submitted this 6th day of December, 2021.

> */s/* Laura S. Gibson
> Laura S. Gibson
> Alabama Bar No. 8271-O74L
> lgibson@whitearnolddowd.com
> WHITE ARNOLD & DOWD P.C.
> 2025 Third Avenue North, Suite 500

Birmingham, AL 35203
Telephone: (205) 323-1888
Facsimile: (205) 323-8907

*Of Counsel:*

Steven M. Bierman, *pro hac vice*
sbierman@sidley.com
John J. Kuster, *pro hac vice* motion pending
jkuster@sidley.com
Julia Bensur, *pro hac vice*
jbensur@sidley.com
Brian Earl, *pro hac vice*
bearl@sidley.com
Leslie Kuhn-Thayer, *pro hac vice*
lkuhntha@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Gregory K. Smith, in his personal capacity,
*pro hac vice*
gs8287@att.com
208 S. Akard St., Office 3042
Dallas, TX 75202
Telephone: (214) 757-3480

Ellen Spano, in her personal capacity, *pro hac vice*
2 Woodhill Drive
Maplewood, NJ 07040
Telephone: (973) 809-4185

*Attorneys for Plaintiff Carrie Jean Huffman, as Personal Representative of the Estate of Terry Terrell Pettiway, Deceased*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, I served a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion to Compel the Production of Documents via ECF on all counsel of record:

Charles Richard Hill, Jr.
Robert Flowers Northcutt
James Walter, Jr.
W. Jackson Britton
Capell & Howard, P.C.
150 South Perry Street
Post Office Box 2069
Montgomery, AL 36102-2069

Rick.hill@chlaw.com
Bob.northcutt@chlaw.com
Jimmy.walter@chlaw.com
Jackson.britton@chlaw.com

Stephen C. Rogers
William R. Lunsford
Maynard, Cooper & Gale, P.C.
655 Gallatin Street, S.W.
Huntsville, AL 35801

Srogers@maynardcooper.com
blunsford@maynardcooper.com

/s/ Laura S. Gibson
Laura S. Gibson