# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **CARRIE JEAN HUFFMAN, as** | ) | |
| **personal representative of the** | ) | |
| **ESTATE OF TERRY TERRELL** | ) | |
| **PETTIWAY, DECEASED,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 4:20-CV-01293-CLM** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEFFERSON DUNN**, *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## THE ADOC PARTIES' RESPONSE TO PLAINTIFF'S
## MOTION TO COMPEL THE PRODUCTION OF DISCOVERY

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Introduction .......................................................................................................... 1

Procedural History ............................................................................................... 3

Argument .............................................................................................................. 7

I.     The ADOC Parties' Proposal to Provide Additional Documents and Communications Provides More than Adequate Discovery in Light of Plaintiff's Claims .............................................................. 7

II.    The Scope of Plaintiff's Revised Requests Remains Unclear ................................................................................................. 10

III.   Plaintiff Mischaracterizes the ADOC Parties' Extensive Document Production and Communications to Resolve the Discovery Disputes ............................................................... 12

IV.   Plaintiff's Revised Requests Remain Overly Broad in Subject Matter and Temporal Scope ................................................. 14

      A.    The Over-Breadth of the Subject Matter ................................... 14

      B.    The Expansive Temporal Scope of Plaintiff's Requests ...................................................................... 17

V.    Plaintiff's Revised Requests Remain Irrelevant to Plaintiff's Claims .............................................................................. 19

VI.   Plaintiff's Revised Requests Impose an Undue Burden ..................... 21

Conclusion .......................................................................................................... 25

Certificate of Service .......................................................................................... 27

The ADOC Parties[1] hereby submit the following Response to the Motion to Compel the Production of Discovery (Doc. Nos. 72, 73, the "Motion") filed by Plaintiff Carrie Jean Huffman ("Plaintiff").

## INTRODUCTION

The scope of discovery sought by Plaintiff's Motion flies in the face of the reasonable limits on discovery provided by the Federal Rules of Civil Procedure and relevant case law. Since the inception of discovery in this matter, the ADOC Parties, in conjunction with the Alabama Department of Corrections ("ADOC"), a non-party to this action, repeatedly sought a reasonable compromise with Plaintiff regarding her First Master Set of Requests for Production (doc. no. 73-1, the "First Requests") in light of the narrow scope of her claims. Plaintiff declined these invitations. Rather than tailoring the discovery process to her claims, Plaintiff seeks to expand the scope of discovery far beyond the relevant claims and discoverable issues in this case.

Plaintiff asserts claims against the ADOC Parties, in their individual capacities, arising out of the death of inmate Terry Pettiway ("Pettiway"). (Doc. No. 28 at ¶¶ 1, 27, the "Amended Complaint"). Plaintiff claims, "on September 2, 2018, [Pettiway,] was murdered by another inmate or inmates outside a prison housing block [at St. Clair Correctional Facility ("St. Clair")] after attempting to break up a

---

[1] The ADOC Parties include Defendants Jefferson Dunn, Grantt Culliver, Edward Ellington, Karla Jones, Dewayne Estes, Anthony Brooks, Gwendolyn Givens, Cedric Specks, Kevin White, Gary Malone, Russel Jones, Phillip Dixon, and Rafael Santa-Maria.

fight." (Id. at ¶ 1).  Thus, Plaintiff's claims squarely focus on a specific event (the "September 2, 2018 Incident") on a particular date in the yard at St. Clair.

With ADOC's voluntary cooperation, the ADOC Parties already produced substantial discovery in this matter, ***including over 9,100 pages of communications and other documentation***.  That production, coupled with the ADOC Parties' proposal for additional production outlined in Exhibit A, constitutes more than sufficient discovery in this matter.  Accordingly, as discussed in greater detail below, Plaintiff's Motion should be denied for the following reasons:

(a) The ADOC Parties' proposal for additional production provides more than adequate discovery given the scope of Plaintiff's claims;

(b) The scope of Plaintiff's Revised Requests[2] remains unclear;

(c) Plaintiff mischaracterizes the ADOC Parties' document production and communications;

(d) Plaintiff's Revised Requests remain overly broad in subject matter and temporal scope;

(e) Plaintiff's Revised Requests remain irrelevant to Plaintiff's claims; and

(f) Plaintiff's Revised Requests impose an undue burden on ADOC and the ADOC Parties.

Thus, the ADOC Parties respectfully request that the Court deny Plaintiff's Motion.

---

[2] See Doc. No. 73-9 at p. 12-21, the Proposed Narrowed or Particularized Requests (the "Revised Requests").

# PROCEDURAL HISTORY

This discovery dispute arises out of Plaintiff's twenty-one (21) First Requests served on March 5, 2021.[3] (Doc. No 73-1). Plaintiff's First Requests on their face constituted grossly overbroad discovery seeking irrelevant documents and information not proportional to the burden and cost imposed on ADOC and the ADOC Parties. For example, Plaintiff sought documentation provided to the U.S. Department of Justice ("DOJ") regarding its investigation (the "DOJ Investigation") into ADOC's thirteen (13) men's prisons. (See Doc. No. 73-1, Req. Nos. 1-2). Plaintiff also requested an enormously broad scope of documents and communications, based on her contrived definition of "Security Issues," dating back to 2014. (Id., Req. No. 13). The ADOC Parties responded to Plaintiff's First Requests on May 4, 2021, objecting on the bases of relevance, overbreadth, and proportionality (among other objections). (Doc. No. 73-2). Despite the unreasonableness of Plaintiff's First Requests, the ADOC Parties worked diligently

---

[3] In an effort to streamline discovery, the ADOC Parties agreed to a "Master Discovery" process with Plaintiff whereby the ADOC Parties would request certain categories of documents from ADOC and (to the extent those documents exist) produce to Plaintiff documentation and communications in ADOC's possession, custody, or control. (Doc. Nos. 43, 73-10). Stated differently, Plaintiff's First Requests seek documentation and communications in ADOC's possession, custody, or control, not in the ADOC Parties' possession, custody, or control. The ADOC Parties agreed to the "Master Discovery" process based on the understanding that it would obviate a third-party subpoena to ADOC pursuant to Rule 45 of the Federal Rules of Civil Procedure. (See id.). With the benefit of hindsight and after receiving Plaintiff's First Requests, the ADOC Parties fairly question the efficiency of the "Master Discovery" process at this stage, but they engaged in the process in a good-faith attempt to streamline discovery.

with ADOC to identify, review, and produce extensive documentation and communications. The ADOC Parties also conducted multiple meet-and-confers in a largely futile effort to encourage Plaintiff to reasonably narrow the scope of her First Requests.

On October 12, 2021, Plaintiff sent a letter offering to drop a limited number of her First Requests and slightly narrow others. (Doc. No. 73-8). However, as a general matter, Plaintiff's First Requests remained objectionable for the variety of reasons previously explained by the ADOC Parties. On November 5, 2021, the ADOC Parties provided a counter-proposal that outlined the extensive documentation previously produced responsive to each request, confirmed the absence of additional documentation for certain requests, and detailed an extensive list of additional production for resolving the disputes over Plaintiff's First Requests. (See Doc. No. 73-10). During a meet-and-confer on November 10, 2021, Plaintiff rejected the ADOC Parties' counter-proposal.

On November 19, 2021, Plaintiff sought the Court's leave to file a motion to compel. (Doc. No. 64). The Court held a telephonic hearing on that motion on November 30, 2021. During the hearing, the Court conveyed to the Parties its perspective on the scope of discovery and expectations moving forward. The ADOC Parties understood the Court indicated that documentation related to incidents similar to the September 2, 2018, homicidal assault on Pettiway might be relevant,

but only if limited to the year before that incident. Plaintiff faced a steep burden to establish the relevance of documentation after September 2, 2018, and to show the proportionality of any potentially relevant documents in relation to the burden on ADOC. Furthermore, the ADOC Parties understood the Court rejected Plaintiff's position concerning the relevance of documentation provided to DOJ related to the DOJ Investigation merely because the DOJ Investigation concerned "security" as Plaintiff broadly defines it. The Court also indicated its expectation that the ADOC Parties would produce documentation and communications not expressly limited to the September 2, 2018 Incident. The ADOC Parties understood the Court encouraged Plaintiff to consider revising her First Requests in advance of filing a motion to compel and directed the Parties to conduct a meet-and-confer to narrow the scope of any dispute presented to the Court. Finally, the Court provided Plaintiff leave to file a motion to compel and set a briefing schedule.

Following the November 30, 2021, teleconference with the Court, on December 1, 2021, the ADOC Parties requested that Plaintiff provide any revised document requests as soon as possible so that the ADOC Parties could evaluate them and the Parties could schedule a meet-and-confer prior to beginning to brief the motion to compel. (See Dec. 1, 2021, Email, attached hereto as Exhibit B). Plaintiff's counsel responded to the ADOC Parties' request for a meet-and-confer on December 3, 2021, i.e., **the Friday before the Monday deadline to file the motion**

***to compel***. (See Dec. 3, 2021, Email, attached hereto as Exhibit C). In the response email, Plaintiff stated, "taking into account the teleconference with Judge Maze yesterday, … it w[ould] not be possible for us to prepare the motion and simultaneously evaluate and potentially further revise the pending request, and conduct a meaningful Meet & Confer with defendants by the end of the day Monday." (See id.). Thus, the ADOC Parties did not receive Plaintiff's revised document requests (to extent she actually narrowed the requests) until the evening of Monday, December 6, 2021, when Plaintiff filed her Motion. (Doc. No. 73-9). Following the ADOC Parties' discussion of Plaintiff's Revised Requests with ADOC, on Monday, December 13, 2021, counsel for the ADOC Parties requested a meet-and-confer on Plaintiff's Revised Requests. (See Dec. 13, 2021, Email, Ex. C). The meet-and-confer did not occur until the afternoon of Thursday, December 16, 2021, i.e., the deadline for the ADOC Parties' opposition to the Motion. (Id.).

As detailed below, the ADOC Parties worked in good faith to resolve or narrow this discovery dispute and avoid the Court's involvement. Furthermore, the proposal in Exhibit A hereto for providing additional documentation and communications to Plaintiff affords more than sufficient discovery in the context of this action. Thus, Plaintiff's Motion is due to be denied.

<u>**ARGUMENT**</u>

Courts routinely deny motions to compel where the party seeking discovery seeks unduly broad and irrelevant information.  <u>See</u>, <u>e.g.</u>, <u>May v. Hetzel</u>, 630 F. App'x 994, 997 (11th Cir. 2015) (upholding a ruling that the plaintiff sought discovery that "included items that were not relevant to [the plaintiff's] claims").  In light of this standard, Plaintiff's Motion is due to be denied because Plaintiff's Revised Requests remain grossly overly broad in time and scope, irrelevant, and disproportional to the nature of Plaintiff's claims and the needs of discovery.

I.    **THE ADOC PARTIES' PROPOSAL TO PROVIDE ADDITIONAL DOCUMENTS AND COMMUNICATIONS PROVIDES MORE THAN ADEQUATE DISCOVERY IN LIGHT OF PLAINTIFF'S CLAIMS.**

The ADOC Parties attempted to comply with the Court's directives outlined during the November 30, 2021, teleconference.  The Court indicated that the ADOC Parties should produce documentation for similar incidents up to one (1) year before the September 2, 2018 Incident and evaluate whether to provide other categories of documents for one (1) year prior to the September 2, 2018 Incident and a short period of time thereafter.  While the ADOC Parties respectfully disagree regarding the relevance of such documentation, the ADOC Parties endeavored to comply with the Court's directives.  Thus, the ADOC Parties conferred with ADOC regarding Plaintiff's Revised Requests and identified additional categories of documents and communications for production.  Exhibit A hereto provides a counter-proposal for

resolving Plaintiff's Revised Requests and outlines production of additional documentation and communications responsive to the Revised Requests. (See Exhibit A hereto).[4]

In light of the legal standard for Plaintiff's claims that the ADOC Parties' "deliberate[] indifferen[ce] to a substantial risk of serious harm" violated Pettiway's Eight Amendment rights, the proposed production of similar incident reports, security audits, staffing shift rosters, and communications regarding the same are more than adequate to provide sufficient discovery to Plaintiff. Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019). In order to establish a deliberate indifference claim, Plaintiff "must make both an objective and a subjective showing." Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)). Plaintiff must allege objective "conditions that were extreme and posed an unreasonable risk of serious injury to [inmate's] future health or safety." Marbury, 936 F.3d at 1233 (internal citations omitted). Plaintiff then must show: "(1) subjective knowledge of risk of serious harm; (2) disregard of that risk; [and] (3) by conduct that is more than mere negligence.'" Swain v. Junior, 961 F.3d at

---

[4] The ADOC Parties make this good-faith offer to provide additional documents and communications in an effort to comply with the Court's directives. In doing so, the ADOC Parties and ADOC do not waive any objection to Plaintiff's Revised Requests, and the proposal to produce the documents and communications should not be construed as an admission that the ADOC Parties or ADOC concede that such documents and communications are relevant to Plaintiff's claims, admissible, or proportional to Plaintiff's needs for discovery in light of the burden imposed on ADOC. More specifically, ADOC and the ADOC Parties do not waive any assertion of privilege or immunity with respect to the proposed production in Exhibit A.

128 (quoting <u>Lane v. Philbin</u>, 835 F.3d 1302, 1308 (11th Cir. 2019)).  Further, Plaintiff must establish that the ADOC Parties acted with a "'sufficiently culpable state of mind.'"  <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 839-40).  Nothing about these legal standards suggests the remotest relevance or admissibility of any evidence of incidents or conditions outside the time frame proposed by the ADOC Parties.

Thus, from the legal standard set out above, any report of similar incidents, security audits, communications regarding the same, and staffing rosters from the time period September 1, 2017 to September 2, 2018 should be more than adequate for the Plaintiff to attempt to establish, if even possible, that the ADOC Parties acted with deliberate indifference to Pettiway's constitutional rights.  Documents outside of that time frame and scope would serve no purpose in Plaintiff's attempt to prove her claims under the proper legal standard, as they would not and could not point to the ADOC Parties' state of mind at the time of the September 2, 2018 Incident. Therefore, the documents already produced and the production proposal in Exhibit A are more than adequate for Plaintiff to prove her claims, if she is able to, without overburdening ADOC and the ADOC Parties.

## II.    THE SCOPE OF PLAINTIFF'S REVISED REQUESTS REMAINS UNCLEAR.

Plaintiff's Revised Requests remain ambiguous and confusing in a variety of different respects.[5]  For example, Plaintiff seeks "all policies, procedures, manuals, or handbooks related to the safety or security of inmates."  (Doc. No. 73-9, p. 14, Req. No. 7; <u>see also id.</u> at p. 12, Req. No. 1).  However, the ADOC Parties already produced St. Clair's Standard Operating Procedures ("<u>SOPs</u>") and ADOC's Administrative Regulations ("<u>ARs</u>").  (<u>See</u> Doc. No. 73-9 at 11).  Thus, it remains unclear what additional "policies," "procedures," and "regulations" Plaintiff seeks.

As another example, the phrase "Security Issues" does not appear in any of Plaintiff's Revised Requests.  (<u>See</u> Doc. No. 73-9 at pp. 12-21).  But Plaintiff's Motion maintains that "Revised Requests 1, 2, 3, 13, 15, and 16 seek documents and communications regarding Security Issues at St. Clair."  (Doc. No. 73-9 ¶ 31).  It remains impossible to determine what documentation might be responsive to Requests Nos. 1, 2, 3, 13, 15, and 16 given Plaintiff's inconsistent, contradictory language for these requests.  Moreover, Plaintiff attempts to expand discovery through use of this definition to seek clearly irrelevant documents such as those related to verbal altercations, sexual assaults, employee corruption, overcrowding, broken locks, cameras, blind spots, use of force, etc.

---

[5] Plaintiff's decision to delay sending her Revised Requests until filing them in conjunction with her Motion deprived the ADOC Parties of adequate time to attempt to clarify the ambiguity in her requests prior to filing this Opposition.

Additionally, Plaintiff's Revised Requests contain numerous internal inconsistencies.[6]  For example, Request No. 13 refers to a time period of "2015 to 2019," "September 1, 2015 to September 20, 2018," and "September 1, 2016 to December 31, 2018."  (<u>See</u> Doc. No. 73-9, p. 17-18, Req. No. 13).  The ADOC Parties cannot decipher which time period Plaintiff actually intends for this request.  Moreover, the "[n]arrowed or [p]articularized" Revised Requests (doc. no. 73-9) included with the Motion actually ***expanded*** some of the requests.  For example, Request No. 8 adds "[d]eceased inmate release forms; Investigative & Intelligence death reporting checklist;" and "[b]ed count rosters," none of which appeared in the original request.  (<u>Id.</u> p. 14-15, Req. No. 8).  The ADOC Parties attempted to decipher the discrepancies and ambiguities in the Revised Requests given the limited amount of time due to Plaintiff's decision to withhold her Revised Requests until she filed her Motion.  However, the ADOC Parties cannot fully understand the Revised Requests in light of the deficiencies outlined above.  The Revised Requests that remain ambiguous and unclear include Request Nos. 1, 2, 4, 5, 7, 8, 9, 12, 13, 14, 15, 16, 17, 20, and 21.  Plaintiff's Motion is due to be denied.

---

[6] The ADOC Parties understand that Plaintiff no longer wishes to pursue the documentation sought by Requests No. 6, 18, and 19.  (<u>See</u> Doc. No. 73-9, pages 3, 8-9, Request Nos. 6, 18-19).

### III. PLAINTIFF MISCHARACTERIZES THE ADOC PARTIES' EXTENSIVE DOCUMENT PRODUCTION AND COMMUNICATIONS TO RESOLVE THE DISCOVERY DISPUTES.

Plaintiff mischaracterizes the extent of the ADOC Parties' document production and the Parties' communications regarding the dispute. The ADOC Parties worked with ADOC to produce an extensive amount of documentation and communications responsive to Plaintiffs' Revised Requests. (See Doc. No. 73-10 at 5-12; Exhibit A hereto). The ADOC Parties produced over 9,100 pages of documentation and communications from ADOC. Moreover, as outlined in Section I above, the ADOC Parties remain willing to produce additional documents and communications.

The communications and agreements among the Parties also vary greatly from the description provided by Plaintiffs. Plaintiff alleges that the ADOC Parties "promised" to produce certain categories of documents "many months ago." (See Doc. No. 73 at ¶¶ 18-20). This characterization remains inaccurate for a variety of different reasons. First, with respect to email communications, the ADOC Parties offered to utilize the well-known process of reasonable search terms applied to a limited number of email custodian accounts. (Doc. No. 73-10 at 1-4; Doc. No. 73-4 at 2-3). Plaintiff rejected this offer. Regardless, as outlined above in Section I, the ADOC Parties remain willing to search for email communications using reasonable search terms and defined email custodian accounts.

Second, Plaintiff mischaracterizes communications regarding production of materials in the Intelligence and Investigation ("I&I") file related to the September 2, 2018 Incident and production of email communications related to the incident. (Doc. No. 73 at ¶ 18). As the ADOC Parties informed Plaintiff in a letter dated September 10, 2021, such documentation and communications required a "Highly Confidential—Attorney's Eyes Only" level of protection due to the sensitive security information they contained. (Doc. No. 73-6 at 2-3). The ADOC Parties requested that Plaintiff stipulate to a revised protective order containing a "Highly Confidential—Attorney's Eyes Only" level of protection. (See id.). Unfortunately, Plaintiff did not agree to the revised protective order until December 1, 2021. (See Doc. Nos. 67, 67-1). Upon entry of this order (doc. no. 69), the ADOC Parties are in the process of producing the relevant additional email communications and "Referenced Documents" to the extent ADOC identified such documentation.

Plaintiff also mischaracterizes the "refus[al]" to respond to Request No. 21, which seeks "Documents and Communications concerning any of Defendants' responses and defenses" in their Answer. (Doc. No. 73, ¶ 48). The ADOC Parties are well aware of and intend to comply with their obligations under Rule 26(e). However, this request invades the work-product doctrine and remains premature as the ADOC Parties have not fully identified the information, documents, and

communications they may use to support their defenses. The Parties are still in discovery and have not taken any depositions. Plaintiff's Motion lacks merit.

## IV. PLAINTIFF'S REVISED REQUESTS REMAIN OVERLY BROAD IN SUBJECT MATTER AND TEMPORAL SCOPE.

### A. THE OVER-BREADTH OF THE SUBJECT MATTER.

District courts possess broad discretion when it comes to the scope of discovery, and courts routinely deny motions to compel discovery if the discovery is overly broad. See Maldonado v. Unnamed Defendant, 648 Fed. App'x 939, 956-57 (11th Cir. 2016) (affirming denial of the inmate's motion to compel as unrelated to the "central issues in his complaint" where the motion "contained broad requests for information about incidents involving other inmates, which were not relevant to his individual … claims"). "Discovery should be tailored to the issues involved in the particular case." Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570 (11th Cir. 1992). Here, Plaintiff seeks money damages from individual-capacity defendants based on her allegations regarding the September 2, 2018 Incident. (See Doc. No. 28). The scope of discovery sought by Plaintiff remains grossly overbroad in terms of the scope of issues related to her claims.

In light of the nature of Plaintiff's claims, her comparison (doc. no. 73 at 15-18) to the United States of America v. State of Alabama, et al., in the United States District Court for the Northern District of Alabama; Case No. 2:20-CV-01971-RDP (the "DOJ Action") and Mark Duke, et al., v. Jefferson Dunn, et al., in the United

States District Court for the Northern District of Alabama; Case No. 4:14-CV-01952-RDP (the "Duke Action") misses the mark.[7]  Plaintiff's insistence that she is entitled to the same documents produced in those actions and in the DOJ Investigation reflects a fundamental misunderstanding of the nature of the claims asserted in those actions and in this action.  DOJ initiated the DOJ Action pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997 et seq.[8]  Similarly, the plaintiffs in the Duke Action filed a putative class action seeking declaratory and injunctive relief from several ADOC officials in their official capacities regarding conditions at St. Clair.  Both the DOJ and Duke Actions seek injunctive relief regarding conditions of confinement generally, not damages relating to a specific incident at a single facility.  Moreover, the plaintiffs in the Duke Action initiated that proceeding in 2014, i.e., ***three (3) years before Pettiway's incarceration within ADOC, and reinstated the proceeding three years (3) after his death***.  (See Doc. No. 28, ¶¶ 33, 39).  Likewise, the DOJ Investigation and subsequent legal action span from 2015 to the present.

---

[7] Furthermore, a confidentiality and non-disclosure agreement protected what ADOC produced in the DOJ Investigation, and protective orders applied to the productions in the DOJ and Duke Actions.  The ADOC Parties continue to object to Plaintiff's Revised Requests to the extent that she seeks to compel them to violate these protections.

[8] The DOJ Investigation and subsequent DOJ Action involve thirteen (13) ADOC facilities and concern whether ADOC (1) adequately protects inmates from physical harm and sexual abuse by other inmates; (2) adequately protects inmates from excessive force and sexual abuse by correctional officers; and (3) provides inmates with sanitary living conditions.  (DOJ Doc. No. 1).

Plaintiff suggests that requests regarding documents and communications from the <u>DOJ</u> Action and Investigation are not burdensome: "because [these documents] have already been identified and provided to DOJ, [the ADOC Parties] should be able to readily produce similar responsive documents." (Doc. No. 73, ¶ 34). The mere fact that ADOC produced documents covering thirteen (13) different ADOC facilities to DOJ does not make them discoverable or relevant to Plaintiff's claims. Under Plaintiff's proposed theory of discovery, any document produced by ADOC in any other matter would be discoverable —an unsupportable position.

Even limiting the scope of the requested documents to St. Clair represents a vast overreach. (<u>See</u> Doc. No. 73-9 at 12). Plaintiff seeks numerous categories of documentation related to the "2016 DOJ CRIPA Investigation, the April 2, 2019 DOJ report, and the July 23, 2020 supplemental DOJ report," thus spanning a five (5) year period. (<u>Id.</u>). Plaintiff, in her Revised Request No. 2, added that not only does she want the documents provided to the plaintiff in the <u>DOJ</u> Action, but also "[a]ll Documents and Communications concerning" the <u>DOJ</u> Action, which would obviously include many privileged documents. (<u>See</u> <u>id.</u> at 13).

Plaintiff also maintained many of her original document requests, which remain overly broad in scope. (<u>See</u> Doc. No. 73-9 Req. Nos. 5, 10, 11, 12, 15, 17, 20, 21). For example, Plaintiff requests "[c]omplete personnel files concerning each Defendant **and** each of the St. Clair Corrections Personnel . . . ." (Doc. No. 73-9, p.

14, Req. No. 5). This request falls well outside the subject matter of Plaintiff's claims. This action concerns whether each ADOC Party acted with deliberate indifference with respect to a single incident. The personnel files for non-parties bear no relevance to this question. Additionally, Request No. 13 remains overly broad despite Plaintiff's revision to only St. Clair and the temporal "limitations." (See id. p., 16-17, Req. No. 13). Plaintiff seeks "[i]nmate count sheets, inmate bed rosters, and staff shift rosters" twice a month for five (5) years; sexual assault; use of force by staff; "non-functioning security cameras"; "worker's compensation filings"; "blind spots"; and "broken locks." (See id.). Not only are these requests burdensome in the amount of documentation requested, but they also go well beyond the scope of her claims. Plaintiff does not allege that Pettiway died as the result of any of these alleged issues. Request No. 20 is similarly over-broad, with the added deficiency that Plaintiff failed to narrow the request to St. Clair.

Accordingly, Plaintiff's Motion is due to be denied because Plaintiff's Revised Requests remain overly broad in scope in terms of of subject matter. The Revised Requests that are overly broad in subject matter include Request Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, and 20.

### B. THE EXPANSIVE TEMPORAL SCOPE OF PLAINTIFF'S REQUESTS.

Courts routinely hold that the scope of discovery must bear a reasonable relationship to the date of the incident in question. See Medina v. Enhanced

<u>Recovery Co.</u>, 2017 WL 5196093, at *9 (S.D. Fla. Nov. 9, 2019). Plaintiff ignored the Court's prior directive during the November 30, 2021, teleconference to reasonably limit the temporal scope of her requests.

For example, as outlined above in Section IV(A), Request Nos. 1 and 2 seek documentation and communications from 2015 to the present. Similarly, Plaintiff seeks "[a]ll communications … concerning Gerard Pruitt from September 1, 2017 to the present." (Doc. No. 73-9, p.13, Req. No. 4). Request No. 7 seeks "policies, procedures, manuals, or handbooks related to the safety or security of inmates at St. Clair from September 1, 2016 to December 21, 2018." (Doc. No. 73-9, p.14, Req. No. 7). Request No. 17 also seeks documents "reflecting any change in policies or practices relating to safety, security, inmate supervision, or provision of medical services at St. Clair from September 1, 2016 to December 31, 2018." (Doc. No. 73-9, p.19, Req. No. 17). Request No. 20 asks for a variety of documentation from "September 1, 2016 to December 31, 2018." (Doc. No. 73-9, p.20, Req. No. 20). Even broader, Request Nos. 13 and 15 ask for a multitude of irrelevant information from "September 1, 2015 to September 30, 2018." (Doc. No. 73-9, p.16-18, Req. No. 13, 15). In short, Plaintiff's Revised Request Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, and 20 remain grossly overbroad in temporal scope. Thus, Plaintiff's Motion is due to be denied.

## V. PLAINTIFF'S REVISED REQUESTS REMAIN IRRELEVANT TO PLAINTIFF'S CLAIMS.

Courts properly deny motions seeking to compel discovery of irrelevant information.  See Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 732 (11th Cir. 1984) (holding that a district court may deny a motion to compel discovery "when the court determines that the questions are irrelevant.").  Plaintiff continues to press for production of documentation and communications irrelevant to her claims.  As outlined above in Section IV(A), in Request Nos. 1 and 2, Plaintiff persists that she is entitled to the same documents produced in the DOJ and Duke Actions.  (Doc. No. 73-9, p.16, Req. Nos. 1, 2).  However, both actions include allegations that are not relevant to Plaintiff's claims.  For instance, both actions allege the use of excessive force, sexual abuse, and unfit living conditions.  These issues bear no relevance to Plaintiff's allegations regarding one (1) alleged murder at a single facility.  Similarly, in Request No. 16, Plaintiff seeks information "other than the September 2, 2018 Incident" that involve "rape," "use of force by St. Clair personnel," and "corruption."  (Id., p.19, Req. No. 16).  This request is overly broad and lacks any relevance to Plaintiff's claims, which involve none of these issues.

As another example, Plaintiff appears to regurgitate the same definition of "Security Issues" for her Revised Requests.  (Doc. Nos. 73, at 18 n.3; 73-9, p.16-20, Req. Nos. 13, 15, 20).  As set forth above in Section II, Plaintiff's definition of "Security Issues" remains overly broad and encompasses numerous issues irrelevant

to her claims.  Plaintiff requests the Court's authority for her to embark upon a fishing expedition to receive wide-ranging documentation, no matter how far removed the incidents might be in time or subject from the September 2, 2018 Incident.  See Porter v. Ray, 461 F.3d 1315, 1324 (11th Cir. 2006) ("[T]he discovery rules do not permit [the parties] to go on a fishing expedition.").

Even more absurd, in Request No. 20, Plaintiff seeks information regarding "efforts . . . to address, improve mitigate, remediate, or modify" irrelevant "Security Issues;" however, Plaintiff fails to limit the request to St. Clair.  (Id. at 20, Req. No. 20).  Any remedial efforts made at other ADOC facilities, even if the "Security Issues" were relevant, would not be relevant to Plaintiff's allegations.  Of course, subsequent remedial measures are not relevant in any way to Plaintiff's claims.  See, e.g., Fed. R. Evid. 407.

As another example, Plaintiff continues to seek "[a]ll Communications" and a variety of different types of documentation concerning Pruitt since 2017.  (Id. at 13-14, Req. No. 4).  Communications and documents regarding Pruitt *post-dating the September 2, 2018 Incident* bear no relevance whatsoever to Plaintiff's claims.

Similarly, in Revised Request No. 13, Plaintiff seeks "[i]nmate count sheets, inmate bed rosters, and staff shift rosters for St. Clair" from 2015 to 2019.  (Doc. No. 73-9, p. 16, Req. No. 13).  Such information lacks any relevance whatsoever to Plaintiff's claims, particularly given the extraordinary temporal scope of the request.

In Request No. 12, Plaintiff seeks documents relating to the "compliance or noncompliance with any ADOC or St. Clair policies, practices, procedure or norms…"; however, Plaintiff fails to provide any indication as to what is a relevant policy, practice, procedure, or "norm."  (Id., Req. No. 12).  In short, Plaintiff's Revised Requests bear no relevance to Plaintiff's claims in a variety of different respects.  The irrelevant Revised Requests include Request Nos. 1, 2, 4, 5, 7, 8, 9, 12, 13, 15, 16, 17, and 20.  According, Plaintiff's Motion is due to be denied.

## VI.    PLAINTIFF'S REVISED REQUESTS IMPOSE AN UNDUE BURDEN.

Plaintiff asks the Court to impose an extraordinary, undue burden on the ADOC Parties and, especially, ADOC.   Because Plaintiff's Revised Requests constitute "Master Discovery" requests (doc. nos. 43, 73-10 at 2-3), Plaintiff seeks documentation and communications in ADOC's possession, custody, and control, not discovery from the ADOC Parties as such.  Thus, ADOC faces the burden and expense of complying with Plaintiff's overly broad, irrelevant requests.[9]  "Although Rule 26(b) applies to discovery of non-parties as well as parties in a suit, non-party status is considered by the court in weighing the burdens imposed in providing the

---

[9] ADOC representatives provided to undersigned counsel the information provided in this Section VI regarding the burden and cost associated with Plaintiff's Revised Requests.  Undersigned counsel understand that ADOC representatives could provide sworn statements further detailing this information if the Court wishes to receive additional documentation.  However, given the Court's familiarity with ADOC's record-keeping and production procedures referenced during the November 30, 2021, teleconference, the ADOC Parties did not wish to unnecessarily enlarge the briefing regarding Plaintiff's Motion.

requested discovery." Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 633, 535 (M.D. Fla. 2003) (citing Solarex Corp. v. Acro Solar, Inc., 121 F.R.D. 163, 179 (E.D.N.Y. 1988). In evaluating the burden of discovery on a non-party, a court should weigh a variety of factors, including the "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by the requests and the particularity with which the documents are described against the burden imposed" on the non-party. United Techs. Corp. v. Mazer, Case No. 05-80990-CIV, 2007 WL 788877, at *1 (S.D. Fla. Mar. 14, 2007).

The time, personnel hours, and cost of producing the documents and communications sought in the Revised Requests would impose an excessive, undue burden under the circumstances of this action. Request Nos. 1 and 2 represent an extraordinary burden on their face. During the DOJ Investigation and DOJ Action, ADOC produced hundreds of thousands of pages of documents concerning thirteen (13) separate ADOC facilities over several years on a wide variety of issues unrelated to Plaintiff's narrow claims. ADOC produced these documents in response to the specific claims and defenses asserted in the DOJ Action, and production in this action would require a new review of hundreds of thousands of pages of documents, the vast majority of which have no relation to Plaintiff's claims. Furthermore, none of the documents from the DOJ Investigation are easily searchable or sortable to obtain documents limited to St. Clair. Instead, production

of documents from the DOJ Investigation concerning St. Clair would require a burdensome physical review of reports, medical records, inmate files, investigative files, etc. so that ADOC could find the needle in a haystack. ADOC would be required to engage in a similar exercise (i.e., a burdensome physical review of thousands of incident reports and related documents, many of which would concern irrelevant incidents such as "flooding the walkway" and "after hours transport") to identify and produce documents from the Duke Action. Similarly, the production of documents from the DOJ Action is burdensome and costly to narrow down the voluminous production of documents responsive to Request Nos. 1 and 2.

The Revised Requests seeking emails and other communications would also inflict an extraordinary cost and expense on ADOC and the ADOC Parties. (See Doc. No. 73-9, p. 13-21, Req. Nos. 2-4, 8, 10, 11, 13, 16, 20, and 12). Plaintiff failed to reasonably limit the scope of her requests for communications by email custodians, time, or subject matter. (Id.). Many requests on their faces seek emails from all ADOC employees, related to a broad scope of topics, and spanning multiple years. (Id.). ADOC currently employs more than 3,000 employees statewide, and more than 150 at St. Clair alone. It is therefore nearly impossible to fully calculate the cost of searching for and producing email communications responsive to Plaintiff's Revised Requests. However, given the temporal span of Plaintiff's Revised Requests, ADOC reasonably estimates that the requests would require

ADOC to search custodian accounts for more than 5,000 employees statewide, and more than 300 employees for St. Clair specifically. Given the scope of Plaintiff's Revised Requests, ADOC conservatively estimated that a search of custodian accounts using the broad subject matters proposed by Plaintiff would result in tens of thousands of emails and, thus, require ADOC to spend thousands of personnel hours and hundreds of thousands of dollars to produce email communications.[10]

Other examples from Plaintiff's Revised Requests demonstrate the burden imposed by the Motion. Among other things, Request No. 13 seeks "[i]name count sheets, inmate bed rosters, and staff shift rosters for St. Clair for the 1st and 15th of each month" from September 1, 2016 to December 31, 2018. (Doc. No. 73-9, p. 17-18, Req. No. 13). Thus, this request spans twenty-eight (28) months, with multiple shifts occurring each day of those months. Complying with the request will require ADOC to undertake a hard-copy review of records to identify potential documentation because ADOC maintains much of the requested documentation in hard copy form. Accordingly, ADOC estimates that complying with this single

---

[10] ADOC emphasized that even searching for and producing the email communications proposed by the ADOC Parties will require a considerable amount of time. ADOC cannot download employee emails internally. ADOC must request, and receive from, an outside agency, the Alabama Office of Information Technology, access to ADOC employees' email accounts. ADOC must then generate reasonable search terms and search the custodian accounts. ADOC would only then be in a position to begin reviewing specific emails for responsiveness and privilege and prepare any email productions. In short, ADOC cannot even begin any additional email searches until it receives direction regarding the email custodians, temporal scope, and subject matter for the email search.

subset of Request No. 13 will require ADOC to devote approximately thirty (30) hours to locate, identify, and produce the requested documentation.

In short, Plaintiff seeks to impose an enormous burden and cost on ADOC and the ADOC Parties clearly disproportional to Plaintiff's need for discovery. Revised Requests that are unduly burdensome include Request Nos. 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 20. For these reasons, Plaintiff's Motion is due to be denied.

<u>CONCLUSION</u>

Based on the foregoing, the ADOC Parties respectfully request that this Court deny Plaintiff's Motion to Compel the Production of Discovery (Doc. Nos. 72, 73).

Respectfully submitted this 16th day of December, 2021.

/s/ Stephen C. Rogers
Stephen C. Rogers
*One of the Attorneys for Jefferson Dunn, Grantt Culliver, and Edward Ellington*

William R. Lunsford
Matthew B. Reeves
Stephen C. Rogers
M. Landon Whatley
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street
Huntsville, Alabama 35801
Telephone: (256) 551-0171
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
mreeves@maynardcooper.com
srogers@maynardcooper.com
lwhatley@maynardcooper.com

*/s/ James N. Walter, Jr.*

James N. Walter, Jr.
*One of the Attorneys for Karla Jones,
DeWayne Estes, Gwendolyn Givens,
Anthony Brooks, Cedric Specks,
Kevin White, Gary Malone, Russell
Jones, Philip Dixon, and Rafael
Santa-Maria*

**OF COUNSEL:**
**CAPELL & HOWARD, PC**
Robert F. Northcutt
C. Richard Hill, Jr.
William Jackson Britton
James N. Walter, Jr.
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, AL 36102
Telephone: (334) 241-8000
Facsimile: (334) 323-8888
bob.northcutt@chlaw.com
rick.hill@chlaw.com
Jackson.britton@chlaw.com
jimmy.walter@chlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, via CM/ECF and/or U.S. Mail on this 16th day of December, 2021:

Brian Earl
Julia L. Bensur
Steven M. Bierman
Zachary Payne-Meili
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5949
Fax: (212) 839-5599
bearl@sidley.com
jbensur@sidley.com
sbierman@sidley.com
zpayne@sidley.com

Leslie Kuhn-Thayer
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7897
Fax: (312) 853-7036
lkuhntha@sidley.com

Laura S. Gibson
J. Mark White
**WHITE ARNOLD & DOWD, P.C.**
2025 Third Avenue North
Suite 500
Birmingham, AL 35203
Telephone: (205) 323-1888
Fax: (205) 323-8907
lgibson@whitearnolddowd.com

Ellen Spano
2 Woodhill Drive
Maplewood, NJ 07040
Telephone: (973) 809-4135
espano@gmail.com

Gregory Kendall Smith
208 S. Akard Street
Office 3042
Dallas, TX 75202
Telephone: (214)757-3480

*Attorneys for Plaintiff*

*/s/ Stephen C. Rogers*
*Of Counsel*
