# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| CARRIE JEAN HUFFMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF TERRY TERRELL PETTIWAY, DECEASED, <br><br> Plaintiff, <br><br> v. <br><br> JEFFERSON DUNN, et al., <br><br> Defendants. | Civ. A. No.: 4:20-cv-01293-CLM |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................3

    I.     Defendants' Proposal is Wholly Inadequate. .......................................3

    II.    Plaintiff's Revised Requests Are Reasonable In Scope. ......................6

    III.   Plaintiff's Revised Requests Are Reasonable in Timeframe. .............10

    IV.   Defendants' Burden Argument Fails. ................................................11

CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Marbury v. Warden*,
  936 F.3d 1227 (11th Cir. 2019) ............................................................................3

*Rosen v. Provident Life & Accident Ins. Co.*,
  308 F.R.D. 670 (N.D. Ala. 2015) ........................................................................10

**Other Authorities**

Fed. R. Civ. Proc. 34 ......................................................................................................12

Plaintiff Carrie Jean Huffman, as personal representative of the Estate of her son, Terry Terrell Pettiway, respectfully submits this Reply Memorandum in support of her Motion to Compel the Production of Documents, Dkt. 72.

**<u>INTRODUCTION</u>**

1. As established in her opening brief, Dkt. 73 ("Motion or "Mot."), Plaintiff seeks to compel discovery that is highly relevant to and supports her claims that Mr. Pettiway's death was the result of (i) Defendants' failure to address the well-known and longstanding dangerous conditions at St. Clair, and (ii) Defendant Dixon's failure to provide Mr. Pettiway medical assistance after he was assaulted. *See* Mot. ¶ 3. Plaintiff has framed targeted document requests that are appropriately limited in scope and proportionate to the needs of the case. *See* Mot., Ex. 8; Ex. 12.

2. Rather than rebutting this showing, Defendants' opposition brief, Dkt. 74 ("Opposition" or "Opp."), wholesale ignores the essence and the detailed allegations of the Amended Complaint. Instead, Defendants advance the same untenable objections they have maintained to producing any information beyond the events of September 2, 2018, that have obstructed the discovery process throughout the past nine months.[1] However, Defendants cannot wish away the

---

[1] Despite the Court's admonition during the November 30, 2021 teleconference that the substance of the discovery dispute, not process, was to be the focus of this motion, Defendants recount at length a version of the parties' dealings that seeks to rewrite history, including who was unavailable to talk on a particular day or the timing of Plaintiff's Revised Requests after months of foot dragging by Defendants. Opp. at 3-6, 12-14. Defendants' grievances are manufactured,

allegations in the Amended Complaint or unilaterally narrow the scope of Plaintiff's claims as stated. Defendants' baseless objections are not tethered to the issues in this action and should be rejected.

3. Additionally, Defendants' proposed "resolution" to the discovery dispute, Opp., Ex. A, is no resolution at all. Defendants' proposed production set (the "Proposed Production") still only encapsulates their extremely narrow reading of Plaintiff's allegations, and is unreasonable in scope and in timeframe.

4. Accordingly, the Court respectfully should reject Defendants' proposal in Exhibit A to their Opposition, and instead should compel Defendants to comply with Plaintiff's narrowed requests, the Revised Requests. *See* Mot., Ex. 8; Ex. 12.

5. For the Court's convenience, Plaintiff attaches Exhibit 12, which streamlines the Revised Requests that currently remain in dispute following the parties' short December 16 meet-and-confer and Defendants' December 17 supplemental production, referenced herein. As reflected in Exhibit 12, Plaintiff has further narrowed the requested time period for Revised Requests 13 and 20 and limited the scope of Revised Request 20 only to encompass St. Clair.

---

and all the more astonishing given their record of resistance and delay. *See generally* Dkt. 64; *see also* Mot., Exs. 3-7, 9. Even on the most recent meet-and-confer, on December 16 after Plaintiff filed the present Motion, Defendants' counsel arbitrarily limited the meeting to less than thirty minutes. While the parties were able to resolve Revised Requests 5 and 9 in that time, counsel was unwilling to stay on to discuss other issues, such as the fundamental task of collecting email communications, or to ask for clarification of certain purportedly ambiguous Revised Requests, preferring instead to complain in their Opposition filed just hours later.

# ARGUMENT

## I. Defendants' Proposal is Wholly Inadequate.

6. Defendants' Proposed Production would deprive Plaintiff of crucial relevant discovery that would support her claims.[2] In particular, Defendants' proposed timeframe of September 1, 2017 to September 2, 2018 for nearly all Revised Requests is untenable. While Defendants accurately cite the elements of the "deliberate indifference" standard, they fail to acknowledge that it would place an undue burden on Plaintiff to require her to make that showing with only a one-year timeframe for discovery. For example, as the case law in Defendants' Opposition makes clear, proving a deliberate indifference claim based on generalized risk requires a showing that, among other things, "serious inmate-on-inmate violence was the norm or something close to it." *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019). To show that inmate-on-inmate violence was the "norm" at St. Clair requires discovery over a representative period of at least the several years leading up to the September 2, 2018 incident. Furthermore, Defendants continue to refuse to produce certain categories of documents after September 2, 2018 that would shed light on the conditions at St. Clair in the run-up to, or at the time of, Mr. Pettiway's murder. As explained in the Motion, Defendants

---

[2] For the avoidance of doubt, the parties did not discuss Defendants' proposed resolution at the December 16 meet-and-confer. However, Plaintiff agrees that Revised Requests 5 and 9 are no longer in dispute.

3

thereby would arbitrarily deprive Plaintiff of a potentially significant source of relevant and probative information. Mot. ¶ 39.

7. Moreover, not only must Plaintiff establish that the unconstitutionally dangerous conditions at St. Clair persisted for years, but she also must show that Defendants were subjectively aware of those conditions and that they did not take reasonable action to mitigate them. Constraining discovery to the span of a single year would unreasonably impair Plaintiff's ability to make the required factual showings, as Defendants' awareness and inaction over an extended period of time plainly would be relevant and probative. Likewise, Plaintiff must make the required factual showings to sustain her wrongful death claim under Alabama law. Therefore, Plaintiff has proposed timeframes for the Revised Requests that are narrowly tailored to the burden she must sustain for the various elements of her claims. Mot., Ex. 8; Ex. 12.

8. Additionally, Defendants' Proposed Production excludes a range of crucial categories of documents that Plaintiff has requested, including but not limited to, any documents or communications regarding efforts by the Defendants to address the unsafe conditions at St. Clair. Defendants acknowledge that a showing of Defendants' unreasonable failure to act is a necessary element of Plaintiff's claims, Opp. at 8, yet propose inhibiting Plaintiff's ability to discover information that would allow Plaintiff to substantiate her allegations.

4

9. Finally, Defendants' Proposed Production of communications is unreasonably narrow. For example, Defendants offer to produce email communications "regarding incident reports" and "regarding security audits." *Id*., Ex. A at Revised Request 13. Thus, Defendants' proposal is limited to producing discussions about these specific documents, and would not capture any discussion about the underlying incidents or conditions. While the former is responsive and should be produced, the latter are the communications that are particularly relevant to and may be probative of Plaintiff's claims. Moreover, Defendants propose limiting their search for communications relating to the security audits to only those sent between September 1, 2017 and December 31, 2018 and communications regarding incident reports to those sent between September 1, 2017 and September 2, 2018—each an arbitrarily short timeframe.

10. Further, to the extent communications relate to Mr. Pettiway's murder, there is no principled reason to limit production of such highly relevant evidence simply because it was sent after September 2, 2018, as proposed by Defendants. Opp., Ex. A at Revised Request 3. All communications relating to Mr. Pettiway's murder are plainly relevant, regardless of timeframe. Mot. ¶ 29.

11. Accordingly, the Court should reject Defendants' Proposed Production as a resolution of Plaintiff's Motion.

## II. Plaintiff's Revised Requests Are Reasonable In Scope.

12. In full blinders mode, Defendants' Opposition extracts a single sentence from Plaintiff's 60-page, 164-paragraph, Amended Complaint stating that "on September 2, 2018, [Terry Pettiway,] was murdered by another inmate or inmates outside a prison housing block [at St. Clair] after attempting to break up a fight," and then extrapolates that therefore, Plaintiff's claims "squarely focus on a specific event . . . on a particular date in the yard at St. Clair." Opp. at 1-2. Defendants proceed to rely on this unsound logic to argue that Revised Requests 1-17 and 20 are overly broad insofar as they seek discovery beyond the particulars of the September 2, 2018 event, including any documents authored after the event that memorialize or bear on Mr. Pettiway's murder or the unsafe conditions that existed at the time. *Id.* at 14-17. While Defendants made a supplemental production on December 17 that, on initial review, appears to include certain Referenced Documents and additional documents responsive to Revised Request 8 relating specifically to the incident on September 2, 2018, that production is incomplete and does not obviate that portion of Plaintiff's motion to compel concerning documents relating to the incident, which the Court respectfully still should grant.

13. Defendants' argument is unsustainable. As they have done since the start of discovery, Defendants purposefully ignore the other 163 paragraphs of the Amended Complaint, which make abundantly clear that Plaintiff's Eighth

Amendment and wrongful death claims warrant discovery evidencing the unconstitutionally dangerous conditions at St. Clair that were allowed to exist on Defendants' watch leading up to September 2, 2018. Mot. ¶¶ 9, 14.

14. Defendants' scope objection focuses primarily on Revised Requests 1 and 2. As an initial matter, Defendants misread Revised Request 2.[3] Revised Request 2 simply says "See RFP 1." *Id*., Ex. 8. Thus, the only substantive request regarding the DOJ CRIPA Investigation is Revised Request 1.

15. As to Revised Request 1, Defendants argue that "Plaintiff's insistence that she is entitled to the same documents produced in [*United States v. Alabama* and *Duke v. Dunn*] and in the DOJ Investigation reflects a fundamental misunderstanding of the nature of the claims asserted in those actions and in this action." Opp. at 14-15, 19. However, *United States v. Alabama* is not referenced anywhere in the Revised Requests and, as the Revised Requests make clear, Plaintiff is no longer seeking documents produced in *Duke v. Dunn.* Mot., Ex. 8; Ex. 12. Further, Plaintiff does not suggest that documents produced to the DOJ as part of the DOJ CRIPA Investigation are discoverable simply because they have been "produced by ADOC in [another] matter." *Id.* at 16. Rather, they are discoverable because, as Defendants concede, they concern the safety of the inmate

---

[3] Specifically, Defendants instead have objected to Plaintiff's original Request No. 2 from her First Master Set of Requests for Production.

population at St. Clair leading up to September 2, 2018. *Compare* Mot. ¶¶ 9, 14, *with*, Opp. at 15 n.8 (The DOJ Investigation concerned whether ADOC "adequately protects inmates from physical harm and sexual abuse by other inmates," and "excessive force and sexual abuse by correctional officers.").[4]

16. Defendants' objections to Revised Requests 13, 15, and 16 are similarly unavailing. First, Defendants assert that "[i]t remains impossible to determine what documentation might be responsive to Requests . . . 13, 15, and 16." Opp. at 10. This feigned ignorance is difficult to fathom given that Revised Request 13 quite literally provides specific categories of documents regarding a detailed list of topics that would be responsive. Similarly, Revised Requests 15 and 16 also enumerate which documents and/or communications would be responsive.

17. Second, Defendants argue that Revised Requests 13, 15, and 16 "encompass[] numerous issues irrelevant to [Plaintiff's] claims." Opp. at 19-20. Not so. Each of the conditions enumerated in these Revised Requests contributed

---

[4] As they have done previously, Defendants also attempt to invoke the confidentiality and non-disclosure agreement in connection with the DOJ Investigation as a shield. Revised Request 1 seeks specific categories of documents that Plaintiff anticipates that ADOC maintains in the ordinary course of business, which ADOC provided to the DOJ. It cannot be the case that these documents are now shielded from disclosure simply because ADOC produced them to the DOJ. As Defendants themselves concede, claiming that the mere production of documents by ADOC to the DOJ would somehow alter their discoverability for all time would be "an unsupportable position." Opp. at 16. Indeed, Defendants insisted on entering an Amended Protective Order in this matter to add an "Attorneys' Eyes Only" designation for certain documents; such a confidentiality designation could be applied, if appropriate in an individual instance or collectively, to documents produced to the DOJ.

to the overall extremely unsafe environment at St. Clair that culminated in Mr. Pettiway's death on September 2, 2018. Each is the subject of substantial allegations in the Amended Complaint and is within the scope of permissible discovery. Am. Compl. ¶¶ 53-65 (violence); ¶¶ 66-72 (weapons and contraband); ¶¶ 73-86 (understaffing, lack of prisoner supervision and contraband searches, blind spots, non-functioning security cameras, broken locks); ¶¶ 87-92 (corruption).

18. Defendants also argue that Revised Request 12 is overly broad because "Plaintiff fails to provide any indication as to what is a relevant policy, practice or procedure, or 'norm.'" Opp. at 21. This objection fails upon simply reading the remainder of Revised Request 12, which goes on to reference, "with respect to inmate supervision, safety and security at St. Clair or the provision of medical services to any inmate at St. Clair, including with respect to the September 2, 2018 Incident." Mot., Ex. 8; Ex. 12. Thus, Plaintiff clearly identifies the issues directly related to the core of Plaintiff's claims—the safety of the inmates at St. Clair as of September 2, 2018. Mot. ¶¶ 9, 14.

19. Finally, Defendants contend that Plaintiff has "mischaracterize[d]" their refusal to respond to Revised Request 21, and that Revised Request 21 seeks privileged information. Plaintiff understands that discovery is ongoing, but that is true at some point in every case, and yet it is an excuse in no case to withhold discoverable documents and information because defendant is still thinking about

9

it. To the extent Defendants are aware of documents or communications that they will rely on for their defenses, those materials must be produced, now, and Defendants of course may supplement such production as appropriate. And to be clear, Plaintiff seeks the evidence on which Defendants will rely, and not legitimate attorney work-product created for or in anticipation of litigation. Defendants' privilege objection is baseless.

### III. Plaintiff's Revised Requests Are Reasonable in Timeframe.

20. The Revised Requests seek documents from specified timeframes that are narrowly tailored to obtaining relevant discovery over a sufficient time period for Plaintiff to support her claims. Mot. ¶¶ 29, 38-39, 43-44.

21. In response, Defendants argue that the requested timeframes for each of the Revised Requests "remain[s] grossly overbroad in temporal scope." Opp. at 18. However, aside from simply listing the requested timeframes, Defendants offer no rationale for their position. *Id.* The burden is on Defendants to demonstrate why each timeframe is overly broad. *See Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680-81 (N.D. Ala. 2015) ("An objection must show specifically how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." (citation omitted)). Defendants' unsubstantiated objections are insufficient.

22.     Defendants take particular issue with Plaintiff's proposed timeframes in Revised Request 13, stating that they "cannot decipher which time period Plaintiff actually intends." Opp. at 11. There is no mystery here. Revised Request 13, as further modified, seeks documents from September 1, 2016 to December 31, 2018, except where a more limited timeframe is provided for a specific category of document. *See, e.g.*, Mot., Ex. 8; Ex. 12 at Revised Request 13 ("All security audits, responses . . . (the Request would seek any such documents from September 1, 2015 to September 30, 2018).

## IV.    Defendants' Burden Argument Fails.

23.     Defendants also maintain that compliance with the Revised Requests would unduly burden ADOC. Defendants have failed to demonstrate any such burden. ADOC is no stranger to litigation and has already collected and reviewed many of the same documents that Plaintiff seeks, in the course of defending against other litigation and investigations relating to the grossly unsafe conditions and violence at St. Clair and other ADOC facilities. Plaintiff's requests here seek specific categories of documents about a single facility—St. Clair[5]—that have already been collected and, presumably, reviewed by ADOC for privilege.

---

[5] As noted in Exhibit 12, Plaintiff has narrowed all of the remaining Revised Requests in dispute to seek documents only pertaining to St. Clair, rather than all ADOC facilities.

24. The Court should reject outright Defendants' argument that they should be relieved of their obligation to produce relevant discovery because "ADOC maintains much of the requested documentation in hard copy form." Opp. at 24. Federal Rule of Civil Procedure 34 still applies to hard copy documents, the prevalence of ESI notwithstanding, and, in any event, the fact that some of ADOC's records are not digitized should not rob Plaintiff of her right to discover relevant documents and information. This applies equally to Defendants' burden objection with regard to Revised Requests 1 because "none of the documents from the DOJ Investigation are easily searchable or sortable to obtain documents limited to St. Clair."[6] Opp. at 22. Defendants cannot hide behind ADOC's recordkeeping deficiencies to evade its discovery obligations. In any event, Plaintiff anticipates that ADOC has many discoverable documents that address system-wide safety and security deficiencies encompassing St. Clair, irrespective of whether they single out St. Clair, which would be highly relevant and probative, or may lead to the discovery of admissible evidence.

25. Moreover, Defendants' burden objection to Revised Request 1 is pretzel logic. Defendants have objected to the Revised Requests to the extent they seek documents that are unrelated to St. Clair but, at the same time, argue that the

---

[6] Defendants again reference a phantom request that ADOC "identify and produce documents from the Duke Action" in their arguments regarding burden. Opp. at 23. Plaintiff has withdrawn her request regarding the *Duke v. Dunn* litigation. *See* Mot., Ex. 8 at Revised Request 18; Ex. 12.

burden to produce documents that are limited to St. Clair would be too great for ADOC. They cannot have it both ways, or, ultimately, either way.

26. In turn, Defendants' burden objection with regard to producing email communications, raised for the first time in their Opposition, *see* Opp. at 24 n.10, is disingenuous as well as baseless. Contrary to Defendants' assertion, Plaintiff never rejected Defendants' offer to search the emails of relevant custodians using search terms. *See* Opp. at 12. Instead, Defendants expressed a willingness to run search terms for certain custodians but then never sent Plaintiff a proposal. *See* Mot., Ex. 4 at 5. In fact, Defendants acknowledged in their June 9, 2021 letter to Plaintiff's counsel that they already had "requested ADOC to conduct [a search] for emails using search terms and the timeframe we believe to be relevant in this lawsuit." *Id*. To Plaintiff's knowledge, she has yet to receive the results of those email searches, the names of the custodians, or the search terms used, much less the emails themselves (with the possible exception of a very small number of emails which Defendants produced in September).

27. The Court should compel Defendants to produce all responsive email communications, texts, and similar communications without further delay, whether maintained on ADOC email accounts or any personal accounts maintained by any of the Defendants.

# CONCLUSION

28. WHEREFORE, Plaintiff respectfully requests that the Court enter an Order granting in its entirety Plaintiff's Motion to Compel the Production of Documents.

Respectfully submitted this 23rd day of December, 2021.

/s/ *Laura S. Gibson*
Laura S. Gibson
Alabama Bar No. 8271-O74L
lgibson@whitearnolddowd.com
WHITE ARNOLD & DOWD P.C.
2025 Third Avenue North, Suite 500
Birmingham, AL 35203
Telephone: (205) 323-1888
Facsimile: (205) 323-8907

*Of Counsel:*

Steven M. Bierman, *pro hac vice*
sbierman@sidley.com
John J. Kuster, *pro hac vice* motion pending
jkuster@sidley.com
Julia Bensur, *pro hac vice*
jbensur@sidley.com
Brian Earl, *pro hac vice*
bearl@sidley.com
Leslie Kuhn-Thayer, *pro hac vice*
lkuhntha@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Gregory K. Smith, in his personal capacity, *pro hac vice*
gs8287@att.com
208 S. Akard St., Office 3042
Dallas, TX 75202
Telephone: (214) 757-3480

Ellen Spano, in her personal capacity, *pro hac vice*
2 Woodhill Drive
Maplewood, NJ 07040
Telephone: (973) 809-4185

*Attorneys for Plaintiff Carrie Jean Huffman, as Personal Representative of the Estate of Terry Terrell Pettiway, Deceased*

# CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2021, I served a copy of the foregoing Reply Memorandum of Law in Support of Plaintiff's Motion to Compel the Production of Documents via ECF on all counsel of record:

Charles Richard Hill, Jr.
Robert Flowers Northcutt
James Walter, Jr.
W. Jackson Britton
Capell & Howard, P.C.
150 South Perry Street
Post Office Box 2069
Montgomery, AL 36102-2069

Rick.hill@chlaw.com
Bob.northcutt@chlaw.com
Jimmy.walter@chlaw.com
Jackson.britton@chlaw.com

Stephen C. Rogers
William R. Lunsford
Maynard, Cooper & Gale, P.C.
655 Gallatin Street, S.W.
Huntsville, AL 35801

Srogers@maynardcooper.com
blunsford@maynardcooper.com

/s/ *Laura S. Gibson*
Laura S. Gibson